[Doc. No. 19]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LAURA CINTRON,<br><br>          Plaintiff,<br><br>     v.<br><br>THE STATE OF NEW JERSEY, et al.,<br><br>          Defendants. | Civil No. 10-195 (NLH/JS) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the "Motion to Enforce Settlement" filed by defendants. [Doc. No. 19]. The Court received the response filed by plaintiff's counsel [Doc. No. 25][1] and defendants' reply [Doc. No. 24]. The Court also held a hearing at which plaintiff Laura Cintron appeared and was heard. All parties consented on the record to the jurisdiction of this Court to decide defendants' motion pursuant to 28 U.S.C. §636(c). For the reasons to be discussed, defendants' motion is GRANTED.

Plaintiff filed her complaint on January 13, 2010 [Doc. No. 1] and her amended complaint on February 3, 2010. [Doc. No. 2].

---

[1] Plaintiff's counsel's response states, "[a]s a result of a disagreement between counsel and client, counsel for Plaintiff cannot provide a detailed response to Defendants' Motion to Enforce Settlement." Brief at 1. The lack of a formal response brief by counsel was ameliorated by the fact that Ms. Cintron appeared and argued in opposition to defendants' motion at oral argument on August 30, 2011. Plaintiff's counsel was also present and participated.

Plaintiff is employed at the State of New Jersey's Ancora Psychiatric Hospital. Plaintiff generally alleges that beginning on or about January 25, 2008, and continuing through the present, she has been subject to sexual harassment and retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"), Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.

The initial conference in the case was held on April 23, 2010. [Doc. No. 6]. Thereafter, the parties vigorously litigated the case and conducted discovery. At the parties' request, on May 17, 2011, the Court held a settlement conference. In addition to plaintiff's counsel (Edith Pearce, Esquire) and defense counsel (Gail Beran, Esquire), plaintiff and a client representative of defendants (Michele West Jones) appeared at the settlement conference. Plaintiff's husband also accompanied her. At the conference the parties reached a settlement which was memorialized in a handwritten May 17, 2011 confirmation signed by plaintiff, all counsel and Ms. Jones. <u>See</u> Certification of Gail R. Beran, Esquire, Exhibit D. The entire agreement reads as follows:

> 5/17/11                    Civil Action No. 10-195
>
> 1. By May 27, 2011, Laura Cintron will submit the DPF-44 form to Mona Fredlund. Within 30 days of submission Ancora will submit the form to the appropriate department.
>
> 2. Laura Cintron's mail receptacle will be moved to the front office area.
>
> 3. Laura Cintron may cc the deputy CEO of Ancora on any future applications for promotional

>    announcements.
>
> 4. The State will credit Laura Cintron 25 days of SLI.
>
> 5. Plaintiff shall be paid $25,000.00 in full settlement of all pending claims against the State and will sign the standard release form dismissing all claims with prejudice.  The check will be made payable to Laura Cintron and The Pearce Law Firm, P.C. and mailed via certified mail to The Pearce Law Firm, P.C.  Laura Cintron agrees to sign all forms necessary to process this settlement.
>
>    s/Laura Cintron              s/Gail R. Beran, DAG
>
>    s/Edith Pearce               s/M.W. Jones, DHS, Legal

As is evident from the signed agreement, the settlement did not merely involve a monetary payment. Defendants also agreed to other concessions to accommodate plaintiff's concerns about ongoing harassment and her inability to be promoted.

After she signed the settlement agreement, plaintiff had second thoughts.  On May 18, 2011, plaintiff faxed a letter to all counsel and the Court stating that she would not proceed with the settlement.[2]  On May 23, 2011, defense counsel sent plaintiff a Release and other settlement documents to sign.  See Beran Certification, Exhibit G.  On the same date, the Honorable Noel L. Hillman entered a 60-day Order of Dismissal.  Id. at Exhibit F.  After plaintiff's counsel did not return the signed Release and settlement documents, defense counsel sent her a June 15, 2011

---

[2] The Court did not retain a copy of plaintiff's letter and is therefore unable to quote it directly.  The Court recalls, however, that plaintiff claimed she had a three-day right of recession.  In opposition to the instant motion plaintiff abandoned this argument.

3

letter asking that the documents be signed and returned. To date, plaintiff has not returned the signed settlement documents that were mailed on May 23, 2011.

Defendants' motion argues that plaintiff agreed to settle the case on May 17, 2011 and as a result the settlement should be enforced. Defendants ask the Court to Order plaintiff to sign the settlement documents they sent plaintiff's counsel.

Plaintiff argues the settlement should not be enforced because she signed the settlement agreement under duress. See Transcript of August 30, 2011 Hearing ("Tr.") 14:18-19. When asked what duress she was under, plaintiff stated:

> I feel intimated [sic], I felt intimidated because I don't know what they will say to--they could give the word and they could come after me and try to make me quit my job. You don't understand where I work at is very dysfunctional. I don't know how I have survived all these years. (Tr. 15:18-23).

Plaintiff also explained:

> I was very overwhelmed by the whole mediation process and intimidated by the fact that the Deputy Attorney General and the attorney for our facility, officials representing my employer, my livelihood, wanted me to sign this form. This, coupled with my attorney, who seemed to be focused on the settlement, made me sign the document under duress. At the moment I did not have the courage to say no, but I know that if I don't do something, my situation will not improve. (Tr. 12: 11-20).

Plaintiff's counsel confirmed that when the settlement agreement was signed plaintiff did not express any reservations. (Tr. 19:24-25; 18:1-6). Plaintiff did not express any reservations even after her counsel explained the settlement and addressed all of plaintiff's questions. (Tr. 18:10-25 to 19:1-10). Plaintiff's

4

husband also did not express any reservations about the settlement. (Tr. 9:4-7). Plaintiff explained why she did not express reservations when she signed the settlement agreement:

> Because everybody was looking at the door. Everybody, it was the end of the day, it had to around 4:00 or 5:00 o'clock, everybody is looking at me, like, hurry up and sign it. And also the fact that these ladies [counsel], I told you, never mind. (Tr. 17:17-21).

Discussion

The construction and enforcement of settlement agreements is governed by the principles of New Jersey contract law. Pascarella v. Bruck, 190 N.J. Super. 118, 124 (App. Div. 1983); Plymouth Mutual Life Ins. Co. v. Illinois Mid-Continent Life Ins. Co. of Chicago, 378 F.2d 389, 391 (3d Cir. 1967); Pacific Alliance Grp. Ltd. v. Pure Energy Corp., C.A. No. 02-4216 (DRD), 2006 WL 166470, at *2 (D.N.J. Jan. 23, 2006). Under New Jersey law a settlement agreement between parties to a lawsuit is a contract separate and independent from the underlying dispute. Plymouth Alliance Grp., at *2 (citation omitted). "The burden is on the moving party [in this case defendants] to establish that the parties entered into a contract of settlement." LNT Merch. Co. v. Dyson, Inc., C.A. No. 08-2883 (SRC), 2009 WL 2169236, at *2 (D.N.J. July 21, 2009) (citing Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997)); United States v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997).

New Jersey public policy favors settlements of litigation. See Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990). However,

5

notwithstanding the policy favoring settlements, "a settlement stipulation should not be enforced 'where there appears to have been an absence of mutuality of accord between the parties or their attorneys in some substantial particulars, or the stipulated agreement is incomplete in some of its material and essential terms.'" McDonnell v. Engine Distributors, Civ. No. 03-1999, 2007 WL 2814628, at *3 (D.N.J. Sept. 24, 2007) (quoting Bistricer v. Bistricer, 231 N.J. Super. 143, 147 (Ch. Div. 1987)).

In order to have an enforceable settlement or contract there "must be a 'meeting of the minds' for each material term to an agreement." Pacific Alliance Grp. Ltd. v. Pure Energy Corp., Civ. No. 02-4216 (DRD), 2006 WL 166470, at * 3 (D.N.J. Jan. 23, 2006) (citing Sampson v. Pierson, 140 N.J. Eq. 524 (N.J. Ch. 1947)). "A meeting of the minds occurs when there has been a common understanding and mutual assent of all the terms of a contract." Knight v. New England Mut. Life Ins. Co., 220 N.J. Super. 560, 565 (App. Div. 1987). The meeting of the minds requirement is an essential element to the valid formation of all contracts. American Furniture Mfg. Inc. v. Value Furniture & Mattress Warehouse, Civ. No. 2995-86, 2009 WL 88922, at *2 (N.J. Super. Ct. App. Div. Nov. 18, 2008). Where the parties do not agree to one or more essential terms, courts generally hold that an agreement is unenforceable. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).

Objective manifestations of intent are controlling when

6

determining if there was a meeting of the minds.  See Brawer v. Brawer, 329 N.J. Super. 273, 283 (App. Div. 2000) ("A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested."); Leitner v. Braen, 51 N.J. Super. 31, 38 (App. Div.1958) ("The phrase, 'meeting of the minds,' can properly mean only the agreement reached by the parties as expressed, i.e., their manifested intention, not one secret or undisclosed, which may be wholly at variance with the former."). "Where there is a misunderstanding between the parties pertaining to one of the material terms of an agreement, there is no meeting of the minds, and therefore no contract."  Pacific Alliance Grp., 2006 WL 166470, at * 3; see also D.R. by M.R. v. East Brunswick Bd. of Educ., 838 F. Supp. 184, 191-92 (D.N.J. 1993) ("A contract cannot be made when there has been no common understanding and mutual assent to the terms of a contract."); Big M, Inc. v. Dryden Advisory Grp., Civ. No. 08-3567 (KSH), 2009 WL 1905106, at * 22 (D.N.J. Jun. 30, 2009) (finding no meeting of the minds where the parties did not attach the same meaning to a contract term).

In this case, plaintiff does not dispute that she agreed on the applicable settlement terms.  In other words, this is not an instance where the parties had a misunderstanding regarding their settlement terms.  Instead, plaintiff argues that her settlement agreement should not be enforced because she signed the agreement

7

under duress.[3]

Plaintiff's burden of proof to show that she signed the settlement agreement under duress is a heavy one. A court may set aside a settlement agreement only if a party can show, by clear and convincing evidence, that the agreement was achieved through "coercion, deception, fraud, undue pressure, or unseemly conduct." Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 475 (App. Div. 2009)(quoting Peskin v. Peskin, 271 N.J. Super. 261, 276 (App. Div. 1994)); see also Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).[4] Undue pressure constituting duress does not require an actual threat, nor does it require that the defendant engage in unlawful conduct. Rubenstein v. Rubenstein, 20 N.J. 359, 365-67 (1956); Smith v. Estate of Kelly, 343 N.J. Super. 480, 499 (App. Div. 2001). For a court to find duress, however, the plaintiff must suffer "a degree of constraint or danger, either actually inflicted or threatened

---

[3]Plaintiff is not claiming she lacked the mental capacity to make a contract.  She also is not arguing that she did not understand the terms of her agreement, or otherwise was unable to appreciate the nature of the business she was transacting.  The fact that plaintiff may have been nervous or even upset does not prove that she was unable to comprehend the nature and extent of her acts. Jennings v. Reed, 381 N.J. Super. 217, 229-30 (App. Div. 2005).

[4]In United States v. Askari, 222 Fed. Appx. 115, 2007 WL 1073698 (3d Cir. 2007)(quoting In re Jobes, 108 N.J. 394, 408 (1987)), the court wrote:

> [clear and convincing evidence] produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth to the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the fact finder] to come to a clear conviction without hesitancy of the truth of the precise facts at issue.

8

and impending, sufficient in severity or in apprehension to overcome the mind or will of a person of ordinary firmness." Rubenstein, 20 N.J. at 365; Smith, 343 N.J. at 499. Where a party claims to have suffered duress in the form of moral compulsion or psychological pressure, the pressure must be "so oppressive under given circumstances as to constrain one to do what his free will would refuse."  20 N.J. at 367; 343 N.J. at 499. Courts apply both a subjective and an objective standard to determine whether duress exists.  343 N.J. at 499. From a subjective standpoint, the pressure must be of a type sufficient to effect the actual control of a party's will.  Rubenstein, 20 N.J. at 366-67; Smith, 343 N.J. at 499. Additionally, a court must find that the pressure in question was of sufficient intensity that "a person of reasonable firmness in plaintiff's situation would have been unable to resist."  Smith, 343 N.J. at 499 (quotations omitted).

Defendants' motion to enforce their settlement agreement will be granted because plaintiff has not satisfied her burden of proving that she signed the agreement under duress.  At all relevant times plaintiff was represented by counsel. Plaintiff's husband was also present to give her comfort. At no time before or immediately after plaintiff signed the agreement did she express any reservation about settling.  Plaintiff's counsel confirms that the settlement terms were explained to plaintiff and all of her questions were answered.  Quite simply, there is no evidence that when plaintiff signed the agreement she was under any duress,

9

coercion, deception, fraud, undue pressure or unseemly conduct. Further, no evidence exists to show plaintiff's free will was subverted. Plaintiff made the voluntary decision to settle after she discussed the situation over with her counsel.

In Weinberg v. Interep Corp., C.A. No. 05-5458 (JBS), 2006 WL 1096908, at *5 (D.N.J. April 26, 2006), the court stated that "[o]ne asserting duress must establish a wrongful act or threat which prevented the party from exercising [her] free will and judgment." Plaintiff presents no evidence of any wrongful act or threat. This appears to be a case of "buyers remorse." However, the fact that plaintiff now has second thoughts or regrets about the settlement does not invalidate the agreement she signed. Plaintiff's second thoughts are entitled to no weight as against the strong public policy in favor of settlements. Jennings, 381 N.J. Super. at 232.

The settlement agreement provides in paragraph 5 that plaintiff agrees to sign the standard Release and all necessary forms to process the settlement. Defendants attached as Exhibit G to counsel's Certification a Release and other settlement documents. Plaintiff has not objected to the language in the documents and therefore will be ordered to execute same.

Conclusion

Accordingly, for all the foregoing reasons, it is hereby ORDERED this 29th day of September, 2011, that Defendants' Motion to Enforce Settlement is GRANTED; and

IT IS FURTHER ORDERED that by November 15, 2011, plaintiff, Laura Cintron, and as necessary her counsel, Edith Pearce, Esquire, shall execute the settlement documents attached as Exhibit G to defense counsel's Certification; and

IT IS FURTHER ORDERED that if the foregoing documents are not timely returned by plaintiff and her counsel, the documents shall be deemed to be executed and enforceable as of November 16, 2011; and;

IT IS FURTHER ORDERED that no later than December 30, 2011, defendants shall process the settlement papers and serve the settlement check in accordance with the parties' written settlement agreement.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge